MATILDA K. WALKER, ET AL., *v.* RAY J. O'BRIEN AND HAWAIIAN TRUST COMPANY, LIMITED, ET AL.

No. 2316.

ARGUED FEBRUARY 20, 1939.     DECIDED APRIL 8, 1939.

COKE, C. J., CIRCUIT JUDGE LE BARON IN PLACE OF PETERS, J., DISQUALIFIED, AND CIRCUIT JUDGE BROOKS IN PLACE OF KEMP, J., DISQUALIFIED.

OPINION OF THE COURT BY COKE, C. J.

John A. Cummins, a distinguished citizen of Hawaii and a contemporary of King Kalakaua and the late Queen Liliuokalani, died in Honolulu in the month of January, 1913, leaving an estate of large value composed principally of land situated in and about the city of Honolulu. In October, 1896, he and his wife, Kahalewai Cummins, executed a joint trust deed (Mr. Cummins being designated therein as the party of the first part and Mrs. Cummins as the party of the second part) by the medium of which Mr. Cummins conveyed his property in trust to Joseph O. Carter, trustee. After providing for certain small annuities which are not involved in this proceeding the trust deed directed that $150 a month be paid out of the income of the estate to Kahalewai Cummins during her lifetime and the balance be paid to John A. Cummins and after the death of his wife the whole of the income should be paid to him during his life. Mrs. Cummins died first and upon the death of Mr. Cummins the net income was to be paid in equal shares to the children of John A. Cummins and his wife Kahalewai and to the child or children of any of them who might die before the party of the first part *per stirpes*.

Mr. Cummins and his wife Kahalewai left four children, namely, Matilda Walker, Thomas P. Cummins, Jane P. Merseberg and May K. Clark. Mrs. Clark in her early womanhood married Charles Creighton. Later on she

was divorced and married Charles Kibling whose name she bore until his death, after which she married Joseph K. Clark. Mrs. Clark died in the State of California in December, 1935. Thomas B. Cummins and Jane P. Merseberg both died prior to Mrs. Clark's death. When the present cause was instituted in the court below Matilda Walker was the sole survivor of the four Cummins children. Mrs. Clark left surviving her husband, Joseph K. Clark, and an adopted child by the name of Marguerite Mamo Clark. She left a last will and testament by the terms of which she bequeathed all of her estate of whatsoever character and wheresoever located to her husband, Joseph K. Clark, and to her adopted child, Marguerite Mamo Clark, in equal shares and named her husband executor of her will. This will was duly admitted to probate in the State of California and the estate is still in the process of administration in the courts of that jurisdiction.

In 1936 Mrs. Walker and certain of the grandchildren of John A. Cummins and Kahalewai Cummins filed in the circuit court a bill in equity to construe the trust instrument above referred to. It is alleged in the bill that the right to share in the net income of the trust estate theretofore enjoyed by May K. Clark terminated at her death and such income from that time should be distributed to Mrs. Walker and the children of Thomas P. Cummins and Jane P. Merseberg.

With this construction of the purpose and effect of the trust deed Joseph K. Clark and Marguerite Mamo Clark took issue, claiming that they were entitled to the share of the income previously distributable to May K. Clark until the death of Mrs. Walker.

Two of the respondents, Ray J. O'Brien and Hawaiian Trust Company, Limited, the present trustees of the Cummins estate, appeared and filed an answer in the

court below but have at all times maintained a neutral attitude as between parties to this controversy.

Circuit Judge Metzger, who presided at the trial of the cause in the lower court, held that, under the terms of the trust deed, upon the death of John A. Cummins, his daughter M. K. Clark having survived him took a vested and alienable right in and to one-fourth of the net income of the trust estate until the death of the last survivor of the original Cummins children, which upon the death of May K. Clark was distributable to her estate and upon the closing thereof should be paid under the provisions of Mrs. Clark's will in equal shares to her husband and adopted daughter. The trustees of the estate were instructed accordingly. From this decree the petitioners have appealed.

The trust instrument, after directing that the monthly allowance of $150 to Kahalewai should be treated as first charged upon the net income of the trust estate, provides: "The balance of said net income to be paid in quarterly instalments to the party of the first part [Mr. Cummins] for and during the term of his natural life, and from and after the death of the party of the second part [Kahalewai Cummins], the entire net income of said trust estate shall be paid to the party of the first part for life, and from and after his death, the said net income shall be paid, share and share alike, to the children aforesaid of the parties of the first and second part, who shall survive the party of the first part, and such child or children of any of them, the children of the parties of the first and second parts, who may die before the party of the first part, except that the children of any of them, the said children of the parties of the first and second parts, who may die before the party of the first part, shall take between them the share only which their parent would have taken if he or she had survived the party of the first part, the net

income, after the death of the party of the first part, shall be subject only to the allowance hereinabove made to the party of the second part, if she shall survive the party of the first part."

The trust document further provides that "Upon the death of the last surviving child of the parties of the first and second parts, the entire trust estate and all property for the time being representing the same shall thereupon vest in and forthwith be transferred and conveyed, free and clear of this trust, to the lawful issue of the children aforesaid then surviving, such issue to take by right of representation."

Where a trust is created by a written instrument and the intent of the settlor is expressed without ambiguity that intent so expressed must prevail, provided it contravenes no rule of law. (See *Bishop* v. *Kemp, ante,* p. 1.)

In the case at bar John A. Cummins, by the terms of his trust deed, definitely and irrevocably conveyed to each of his four children *who survived him* a one-fourth share in the net income of his trust estate as tenants in common for the duration of the trust. May K. Clark survived her father and thus, by the plain and specific provisions of the trust deed, became, at the time of his death, the owner of one-fourth of the net income until the death of the last survivor of the four children with a right of control and enjoyment restricted and limited only by the element of time. This right did not terminate at the death of May but survived her until such time as the last of the four children died. She was free to make an *inter vivos* disposition of it and failing to do so it would upon her death descend to her legal representatives.

Ordinarily and as a general rule the grant of an annuity to a person without words of limitation is a grant of the annuity during the life of such person. But a personal annuity given for a term of years or for the life

of another does not terminate at the death of the annuitant but passes to his personal representatives. (3 C. J. 205, 206. See also *Stevenson's Ex'rs* v. *Stevenson*, 14 S. W. 955; *In re Shuford's Will*, 80 S. E. 420.)

By the terms of the Cummins trust deed Mrs. Clark was granted an annuity payable out of the income of her father's estate beginning at his death. The deed required the payment of this annuity during the lifetime of the four children of Mr. and Mrs. Cummins *in esse* at the time of the execution of the trust instrument. Under the recognized rule the annuity did not terminate at the death of the annuitant.

A similar question arose in the case of *Haw'n. Trust Co.* v. *McMullan*, 23 Haw. 685, where the principle involved is summarized in the syllabus in the following language: "Ordinarily a gift of an annuity to a person, without words of limitation or other significant language is to be regarded as a gift of the annuity during the life of the annuitant, but where an annuity is given to one for a specified period of time, an intent is to be inferred that it was not to terminate with the life of the annuitant. Held, accordingly, that where property was given by will to a trustee to hold until the death of the last survivor of a number of annuitants and for twenty-one years thereafter, to pay certain annuities and to accumulate the unapplied income, and then divide the trust estate 'among those persons entitled at that time to the aforementioned annuities,' an annuity payable to the children of S. P. 'for life and then to their heirs' the interest of the heirs in the annuity was for the entire period of the trust, and upon the death of one his share became payable to his heirs."

Again in *Haw'n. Trust Co.* v. *Galbraith*, 25 Haw. 174, an annuity bequeathed to Ann Jane Galbraith who had died intestate was involved. George, a nephew, one of

her heirs, assigned his interest in the annuity to his brother Thomas. George having died, his heirs claimed the annuity on the assumption that George could not assign the annuity beyond his own life. Thomas, the assignee, claimed ownership of the annuity for the remainder of the trust period. This court sustained Thomas, holding that George took an estate of inheritance in the annuity and owned the same in fee simple which carried with it the right of disposition either by will or assignment. "If members of a class die after the gift vests in the class, their interests, if of such a sort that they will survive the death of the owner, will pass to their heirs or personal representatives, and not to the surviving members of the class. In this respect, too, the gift to the class does not differ from that to an individual." Page, Wills (2d ed.), p. 1565.

In the present case a one-fourth interest in the net income was conveyed to each of the Cummins children who survived their father, not as a joint tenant of the other children with the right of survivorship but as a tenant in common with them. The defeasance of this right would of course occur at the death of the last of the Cummins children at which time the trust would terminate and distribution of the trust corpus would be made as required by the trust deed. (See *Stanwood* v. *Stanwood,* 60 N. E. 584; *In re Shuford's Will, supra; Thompson* v. *Martin,* 183 N. E. 51; *Goodyear Shoe Machinery Co.* v. *Dancel,* 119 Fed. 692.)

Appellants attempt to inject into this cause the status of Marguerite Mamo Clark. They argue that because Marguerite is an adopted child of May K. Clark she could not become a beneficiary under the Cummins trust. Neither Marguerite nor Joseph K. Clark are asserting any claim to the income of the trust estate as the heirs of May K. Clark. Their claim thereto is based upon the

ground that the share in the income granted to May K. Clark was bequeathed to them by the last will of the latter. Whether or not Marguerite would have taken the income, or any part of it, by inheritance had May K. Clark died intestate is not an issue in this appeal.

The record before us discloses that the identical issues involved in the present suit were determined by the circuit court in 1934 (equity number 1625); that all of the parties to the present proceedings or their privies were parties to that suit and were served with process therein. The record further shows that the circuit judge who presided at the trial of that case rendered a decree in all respects similar to the decree now before us for review and that none of the parties challenged the decree by appeal or otherwise. The appellees urge that under the doctrine of *res adjudicata* the former decree is now conclusive upon all of the parties to the present proceedings and that appellants are barred from again litigating the same question. The court below adopted that view. But concluding as we do that in the case at bar the trial judge correctly adjudicated and disposed of the issues upon their merits, we deem it unnecessary to decide whether the doctrine of "estoppel by judgment" should be invoked against the appellants.

The decree appealed from is affirmed.

*T. Waddoups* (*W. B. Lymer* and *M. K. Ashford* on the briefs) for petitioners.

*I. M. Stainback* (*Stainback & Massee* on the brief) for respondents.

HOOMANA NAAUAO O HAWAII, AN ECCLESIAS-
TICAL CORPORATION, *v.* HENRY PALI.

No. 2400.

ARGUED APRIL 21, 1939.                    DECIDED APRIL 25, 1939.

COKE, C. J., KEMP, J., AND CIRCUIT JUDGE METZGER
IN PLACE OF PETERS, J., ABSENT.

*Per Curiam.* In an action at law instituted in the circuit court of the second judicial circuit judgment was rendered in favor of the plaintiff in the sum of $1450, together with costs in the sum of $294.40, making a total of $1744.40. Thereafter the defendant duly filed a motion for a new trial and at the same time filed a bond in the penal sum of $100, running in favor of Robert Parker, Esq., clerk of the supreme court of the Territory of Hawaii, and his successors in office. Said bond, after reciting the rendition of the judgment and that the defendant had filed or is about to file a motion for a new trial of said action and to file and prosecute a bill of exceptions or a writ of error in said action to the supreme court of the Territory of Hawaii unless said motion for a new trial is granted, proceeds as follows: "NOW, THERE-FORE, if the said HENRY PALI, as defendant and appellant as aforesaid, shall pay all costs of the said motion for a new trial in case the same shall not be sustained, and all costs which shall or may subsequently arise or otherwise accrue and be awarded against him in said action or on said appeal, until the final termination thereof, and that he will not to the detriment of the plaintiff in said cause remove or otherwise dispose of any property it may have liable to execution until this cause is finally

decided and terminated, and shall pay such final judgment as may be recovered against him in said cause, and in all other respects abide by and perform such final judgment as may be entered in said cause, then this obligation shall be void; otherwise the same to remain in full force and virtue." The amount of the penalty and the sufficiency of the sureties of the foregoing bond were fixed and approved by the circuit judge before whom said cause was pending. The cause has now reached this court on defendant's bill of exceptions and said bond has been transmitted to this court as part of the record in said cause.

The appellee now moves for a dismissal of the defendant's bill of exceptions on the grounds, to wit: (1) That defendant herein made no deposit of $25 nor filed a bond for said amount to secure the payment of costs to accrue in this court and cause as provided by section 3532, R. L. 1935; (2) that no valid or sufficient bond to secure the payment of costs to accrue in this court in said cause has been filed by said defendant; and (3) that the bond filed by the defendant herein is insufficient and of no force and effect for the reason that the trial court had no jurisdiction to hear and determine the motion for a new trial in said cause in that defendant's bond to the clerk of this court not to remove or dispose of, to the detriment of the plaintiff, any property liable to execution on the judgment is in a sum less than the amount of the judgment rendered in said cause.

Section 3532, upon which the appellee relies, is as follows: "Upon the allowance of the bill of exceptions and the deposit of twenty-five dollars, or a bond of the same amount by the party excepting with the clerk of court, for costs to accrue in the supreme court, the questions arising thereon shall be considered by the supreme court; but judgment may be entered and may be enforced

24

*E. Vincent* for the motion.
*I. M. Stainback* contra.